IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**UNITED STATES OF AMERICA,**

vs.  Case No. 5:01cr16-RH
Case No. 5:04cv62-RH/WCS

**WILLIAM DEAN McCOLLUM,**

Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY MOTION TO VACATE

Defendant filed an amended motion to vacate sentence pursuant to 28 U.S.C. § 2255. Doc. 88. The Government filed a response in opposition and request to supplement the record. Doc. 91. Defendant's request for discovery was denied. Doc. 96. Defendant filed a traverse. Doc. 99.

**History of the Case**

Defendant was charged in a one count superseding indictment with being a felon in possession of a firearm in and affecting commerce, having three previous convictions for a violent felony or serious drug offense. Doc. 16. The indictment charged violation of 18 U.S.C. § 922(g) (prohibiting possession) and § 924(e) (the Armed Career Criminal Act, raising the penalty to a 15 year mandatory minimum to a maximum of life based on

the requisite prior felonies).  Defendant entered into a plea and cooperation agreement with the Government.  Doc. 25.[1]  He agreed that he was pleading guilty because he was, in fact, guilty.  *Id.*, p. 4.  He agreed that if it went to trial the Government would present evidence as set out in the statement of facts.  *Id.*, pp. 4, 7.  The statement of facts provides:

> That sometime prior to July 5, 2001, William Dean McCollum purchased a Sig Sauer pistol, serial number B243210, from a Richard Grimm.  On or about July 5, 2001, Mr. McCollum possessed the Sig Sauer pistol during the following circumstances.  Mr. Grimm offered to purchase the Sig Sauer from Mr. McCollum for approximately $1,000.00.  Mr. McCollum agreed to the offer.  On or about July 5, 2001, William Dean McCollum possessed the Sig Sauer pistol, serial number B243210, and provided the pistol to Mr. Grimm in exchange for $1,000.00 cash.
>
> The Sig Sauer pistol, serial number B243210, which [was] possessed, sold, or traded by William Dean McCollum, was manufactured in the country of Germany and had been transported in interstate or foreign commerce prior to Mr. McCollum's possession on July 5, 2001.

*Id.*, p. 7.

The plea agreement provided that whether to file a substantial assistance motion would be at the sole discretion of the Government, the granting of relief was left solely to the court, and that "[r]egardless of the defendant's cooperation . . . the defendant may be deemed not to have provided substantial assistance." *Id.*, p. 5-6.

At the guilty plea hearing, the Government again summarized the facts expected to be proven at trial.  Doc. 82, pp. 13-14.  Defendant's position was that it was a trade rather than sale of the firearm.  *Id.*, pp. 15-17.  He admitted that he had possessed a

---

[1] This and other documents were originally sealed as Defendant was cooperating with the Government, but later unsealed by court order.  *See* Doc. 82, pp. 2-4 (allowing plea to be tendered in camera, noting cooperation) and doc. 79 (granting motion to unseal all documents).

firearm in or affecting commerce having been convicted of a felony, and that he had three previous convictions for either a violent felony or serious drug offense committed on occasions different from one another. *Id.*, pp. 15-17. He understood he faced a minimum sentence of 15 years. *Id.*, p. 17. Defendant verified his signature on the plea agreement and said that counsel explained the plea and its consequences to him. *Id.*, pp. 22-23. The guilty plea was accepted. Docs. 28 and 42.

At sentencing, Defendant's objection to ¶ 38 of the PSR was found to be valid, but the change did not affect the sentence. Doc. 63, pp. 3-4. Since a § 5K1.1 motion was not filed, it was "a mandatory sentence, plain and simple." *Id.*, p. 5. Counsel reserved the right to raise objections to the guidelines in the event the Government filed a substantial assistance motion under Fed.R.Crim.P. 35. *Id.*, pp. 5-6.

Defendant was again advised that the minimum sentence was 15 years, and Defendant told the court he thought it was an unjust sentence. *Id.*, pp. 7-8. Counsel said that he had gone over the mandatory nature of the sentence with Defendant and his family, and "[w]e made an effort to do some substantial assistance that fell short, apparently, in the eyes of the government." *Id.*, p. 9. Defendant was sentenced to 180 months. *Id.*, p. 11.

Defendant took an appeal. The Eleventh Circuit affirmed, rejecting arguments that the firearm needed more than a minimal nexus to interstate commerce, and that the prior South Carolina convictions for assault and battery of a high and aggravated nature (ABHAN) did not qualify for Armed Career Offender sentencing. Doc. 73.

**Standard of Review**

As set forth ahead, Defendant raises substantive claims and claims that counsel's failure to raise those claims was ineffective assistance of counsel. The substantive claims are procedurally defaulted, and "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000) (emphasis by the Court); *see also* Massaro v. United States, 538 U.S. 500, 509, 123 S.Ct. 1690, 1696, 155 L.Ed.2d 714 (2003) (ineffective assistance of counsel is cognizable under § 2255 whether or not it could have been raised on appeal). Thus, the related substantive claims are considered in the context of the claims of ineffective assistance of counsel.

"A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and must also "affirmatively prove prejudice." Strickland v. Washington, 466 U.S. 668, 690, 693-694, 104 S.Ct. 2052, 2066-68, 80 L.Ed.2d 674 (1984). The court need not approach the Strickland inquiry in any particular order, or address both prongs if an insufficient showing is made on one. 466 U.S. at 697, 104 S.Ct. at 2069.

Since Defendant challenges his guilty plea based on counsel's allegedly erroneous advice, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 467 U.S. 52, 58-59, 106 S.Ct 366, 370, 88 L.Ed.2d 203 (1985). For example, where the alleged error is counsel's failure to discover evidence, the

prejudice inquiry depends on whether the alleged evidence would have changed counsel's advice to plead guilty, which depends on whether the alleged evidence would have likely changed the outcome if the case had gone to trial.  *Id.*  Moreover, in a challenge to a guilty plea:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (citations omitted).

**Grounds Raised**

  **Alleged Brady$^2$ Material**

  Grounds one, two and five are set forth in the amended § 2255 motion form and supporting memorandum (filed together as doc. 88), at pp. 3-3(a), 4(d) (motion) and pp. 3-13, 16-17 (memorandum).  Defendant asserts that the prosecution withheld Brady material, that counsel was ineffective for failing to demand discovery of this material, and that but for the Government's withholding of it and counsel's ineffectiveness, Defendant would not have entered a guilty plea.

  There are two aspects of this claim.  Defendant contends that there was Brady evidence that the firearm (a 9 mm Sig Sauer) was a "prop" with the firing pin and firing mechanism removed, the firearm was never test-fired, and thus was not a "firearm" as

---

  $^2$ Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)

intended by § 922(g).  Defendant also asserts that the evidence against him might have been suppressed on the basis of entrapment; and if not suppressed it could have been argued (to a jury) that the Government improperly engineered the crime by supplying the firearm to him in the first place, and then buying it back.

Defendant has supplied exhibits in support of his claims.  Doc. 88, Exs. A and B.  Exhibit A is 16 page composite exhibit, the first page of which is a response dated April 9, 2003, to Defendant's Freedom of Information Act (FOIA) request for records held by ATF.  Doc. 88, Ex. A, p. 1.[3]  The file (in response to the FOIA request) consisted of 319 pages.  *Id.*  The other pages in Ex. A are presumably documents supplied in response to Defendant's request.

There is no evidence that a "prop" firearm used by the ATF is, by definition, inoperable.  But even if the firing pin of this 9 mm Sig Sauer had been removed, it was still a "firearm" as defined by 18 U.S.C. § 921(a)(3) because, as that statute provides, it could "readily be converted to expel a projectile by the action of an explosive."[4]  Our circuit has held that the Government does not have to produce evidence that the firearm was operable.  United States v. Adams, 137 F.3d 1298, 1300 (11th Cir.1998).  So has every other circuit to consider the question:

> Although we have yet to answer the question, every other circuit to consider it has concluded that an inoperable weapon falls within § 921(a)(3)'s definition of a "firearm."  *See, e.g., United States v. Adams*, 137 F.3d 1298, 1300 (11th Cir.1998); *United States v. Maddix*, 96 F.3d

---

[3] The pages bear various numbers, not in any particular order.  The court has numbered the bottom right corner of the pages of the court's copy, for ease of reference.

[4] 18 U.S.C. § 921(a)(3) supplies the definition of "firearm" for § 922.

Case Nos. 5:01cr16-RH and 5:04cv62-RH/WCS

> 311, 316 (8th Cir.1996); *United States v. Yannott*, 42 F.3d 999, 1006 (6th Cir.1994); *United States v. Perez*, 897 F.2d 751, 754 (5th Cir.1990); *see also United States v. Brown*, 117 F.3d 353, 354-56 (7th Cir.1997) (holding that inoperable gun is "firearm" for purposes of Sentencing Guidelines, where § 921(a)(3)'s definition of firearm was "identical, in all relevant respects," to Guidelines' definition).

United States. v. Rivera, 415 F.3d 284, 286 (2nd Cir. 2005) (firing pin broken and firing pin channel flattened); United States v. York, 830 F.2d 885, 891 (8th Cir. 1987), *cert. denied*, 484 U.S. 1074 (1988) (firing pin missing and the cylinder and barrel did not properly line up). Thus, the premise of the first part of this claim is legally without merit.

Further, it is factually without merit. While there are references in this record to using "props" for the controlled sale, including a memorandum titled "Prop Request," there is no reference to the Sig Sauer firearm at issue as a prop. *Id.*, pp. 5, 6, 9, and 13. Three Rossi snub nose .38 caliber revolvers were sought as props for the controlled purchase because Defendant was interested in obtaining a revolver and more interested in trading the Sig Sauer for another firearm than in selling it outright. *Id.* The Rossi revolvers requested were certified for use as undercover props. *Id.*, p. 13. There is a handwritten note in the margin that only one Rossi would be used. *Id.*

The informant would be instructed to "trade or sell the Rossi revolver to MCCOLLUM as the situation dictate[d]," but was "instructed that it is preferable to purchase the Sig pistol from MCCOLLUM outright if possible without having to display the props to MCCOLLUM." *Id.*, p. 5. If Defendant sold the Sig Sauer outright for cash, the informant was to leave the meeting after the deal and the Government would present the case to the grand jury; if a trade was made then the surveillance teams would standby for an arrest. *Id.* As it happened, Defendant accepted cash without a

trade, and the informant left the meeting. Doc. 88, Ex. B (transcript of July 5, 2001, conversation).

The taped conversations between Defendant and the informant, transcripts of which were supplied to Defendant during discovery,[5] reflect that the informant told Defendant he was interested in buying his former Sig Sauer back, and Defendant expressed interest in a trade (rather than sale) for another firearm, and said he liked shiny revolvers. Doc. 91, Attachment 1 (including transcripts of audiotapes on June 20, June 22, and July 5, 2001). It is clear from the record (particularly clarifications by the defense at rearraignment), that Defendant was concerned that he not be caught *selling* a firearm, and wanted it clear that he traded rather then sold firearms. References to props were to firearms to be used in obtaining the Sig Sauer, not the Sig Sauer itself. For these reasons, the first part of this claim is legally and factually without merit.

The second part of the claim is that the Sig Sauer was originally supplied to the informant by the Government. In requesting discovery for his § 2255 motion, Defendant asserted that "had he known prior to the Rule 11 change of plea hearing that the Government's (ATF) agencies had supplied the firearm (i.e., 9 .mm Pistol) to it's [sic] government informant to trade to him in order to place it in his possession, where it

---

[5] The Government asserts that "the defendant's claims that he never received evidence of 'entrapment' (defendant characterizes the undercover handgun sale as entrapment) are unsupported and contrary to the record," as Defendant received the tape recordings and transcripts during discovery. Doc. 91, p. 4. The court does not read Defendant's Brady claim as based on his never receiving the tapes or transcripts, or that he never received evidence of "entrapment" as though that is synonymous with the undercover sale. The Brady claim appears based on the records Defendant obtained later, not through discovery but through his FOIA request, referencing firearms as props to be used in the controlled buy.

obtained the evidence of his possession of the firearm by unlawful police 'entrapment,' to furnish it's [sic] informant a $1000.00 to 'buy-back' the Government's pistol," he would not have pleaded guilty to the indictment.  Doc. 92, p. 2.  He asked that the Government produce all 319 pages from the ATF's investigation in an unredacted form as he was provided the pages in redacted form.  Doc. 93, pp. 1, 3.  He asserts that the full report would support his claim "that the firearm (9 .mm Pistol) charged in the Government's indictment originated from the Government (ATF) agency.  For it was the Government's property that it used in the undercover 'buy-back' operation."  *Id.*, p. 2.  The court denied discovery, finding that "Defendant seeks discovery to show that the firearm originated with the ATF.  In reviewing the 2255 claims, the court will assume this allegation is correct."  Doc. 96.

      The assumption made by the court in denying this motion for discovery was misplaced, but the denial of discovery was correct.  Attached to Defendant's § 2255 motion is a memorandum from the Resident Agent in Charge of the Pensacola Office of the ATF to the Tampa Field Division, subject : "Prop Request."  Doc. 88, ex. A, p. 6.  This memorandum states that the Pensacola Field Office did not initiate its investigation into the illegal firearms possession of Defendant until June 7, 2001.  *Id.*  The memo further states that the informant "has made contact *and previously* traded a Sig Sauer P228 pistol to MCCOLLUM . . . ."  *Id.* (emphasis added).  Likewise, the sworn allegations of the criminal complaint assert that ATF Agent Saier interviewed the informant (Grimm) on June 7, 2001, and the informant told him that he had known Defendant since November of 2000.  Doc. 1.  The complaint asserts that at this interview, on June 7, 2001, the informant "said that in May of 2001 MCCOLLUM traded

a Smith and Wesson Model 29 and $500.00 in cash to the CI in exchange for a Sig Sauer P228 pistol and six ammunition magazines." Doc. 1, attachment, p. 1. *See also* doc. 20 (Government Notice of Intent to Offer Extrinsic Act Evidence), p. 2 (Grimm sold the Sig Sauer to Defendant around May of 2001). At the June 7 meeting the informant provided the serial number of the Smith and Wesson, and later provided the serial number for the Sig Sauer. *Id.*

Thus, there is no evidence that the ATF directed the informant to trade the Sig Sauer to Defendant in May, 2001. Indeed, had the Government been involved at the time of the earlier transaction, Defendant would have been charged with possession of the Smith and Wesson Model 29, which he traded (along with cash) for the Sig Sauer. There is no need for further discovery on this point as Defendant has obtained the discovery he needs and the discovery does not support his claim.

Further, even if the Sig Sauer had originated from the ATF, Defendant had no entrapment defense to make. The Government had evidence that Defendant offered to sell a shotgun to the informant, Grimm, around February of 2001; that sometime around "spring break" in 2001, Grimm sold to Defendant a Llama .45 handgun, and a North American Arms .22, both for cash; and that on two occasions between December 2000 and the time of arrest, Defendant offered to sell a handgun with missing or obliterated serial numbers. Doc. 20, pp. 1-2. Given this evidence, an entrapment defense had little hope of success. *See*, United States v. Francis, 131 F.3d 1452, 1455-56 (11th Cir. 1997), *cert. denied,* 525 U.S. 986 (1998) (valid entrapment defense requires government inducement of crime *and* defendant's lack of predisposition to commit the crime prior to inducement); United States v. Walther, 867 F.2d 1334, 1342 (11th Cir.

1989) ("[e]vidence of prior acts of misconduct is admissible as a matter of predisposition in rebuttal to an entrapment defense.").

As a consequence, there was no Brady violation because evidence regarding the requested revolvers was not favorable to Defendant (either as exculpatory or impeachment evidence), and was not material. *See* Stephens v. Hall, 407 F.3d 1195, 1203 (11th Cir. 2005) (*pet. for cert. filed* August 2, 2005) (to establish a Brady violation for suppression of evidence by the prosecution, the evidence must be favorable to the accused, either as exculpatory or for impeachment, and it must be material; *i.e.*, there must be a reasonable probability that if the evidence was disclosed, the result of the proceeding would have been different) (*discussing* Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and United States v. Bagley, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985), other citations omitted). *See also* United States v. Ruiz, 536 U.S. 622, 633, 122 S.Ct. 2450, 2457, 153 L.Ed.2d 586 (2002) ("the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant.").[6]

---

[6] Defendant cites Ruiz, referencing both the Ninth Circuit opinion and the Supreme Court opinion, for the proposition that a defendant may *not* by plea agreement waive the right to receive undisclosed Brady material. Doc. 88 (memorandum) p. 11; doc. 93, pp. 4-5; doc. 99, pp. 3-4. But the Ninth Circuit's opinion was reversed, and the Supreme Court upheld the waiver. 536 U.S. at 629-631, 122 S.Ct. 2455-56. The Constitution "permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *Id.*, at 630-631, 122 S.Ct. at 2456 (collecting cases). The Court found it difficult to distinguish a defendant's ignorance of possible impeachment evidence from other forms of ignorance in these cases. *Id.* The Court also found no error in requiring a defendant to waive the right to receive information regarding any affirmative defense that might be raised at trial. *Id.*, at 633, 122 S.Ct. at 2457.

Case Nos. 5:01cr16-RH and 5:04cv62-RH/WCS

**Use of Prior Convictions**

In grounds three and four, Defendant asserts that his uncounseled convictions from 1976 and 1977 should not have been used to sentence him under § 924(e), and that counsel was ineffective to not raise this challenge at sentencing or on appeal. Doc.88, at pp. 3(b) and 4 (motion) and pp. 13-16 (memorandum).  In ground six, Defendant asserts that he has asked the state court to vacate his uncounseled convictions, and wishes to preserve the right to challenge the § 924(e) enhancement if he is successful in state court.  *Id.*, at p. 4(e) (motion) and p. 17 (memorandum).

With the exception of convictions obtained in violation of the right to counsel, a defendant has no right to collaterally attack prior state convictions at his federal sentencing or by § 2255 motion.  Custis v. United States, 511 U.S. 485, 487, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994) (also involving a § 924(e) sentence); Daniels v. United States, 532 U.S. 374, 382-383, 121 S.Ct. 1578, 1583-84, 149 L.Ed.2d 590 (2001) (§ 2255 motion challenging sentence enhanced under § 924(e)).  "A defendant may challenge a prior conviction as the product of a *Gideon* [*v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ] violation in a § 2255 motion, but generally only if he raised that claim at his federal sentencing proceeding."  Daniels, 532 U.S. at 382, 121 S.Ct. at 1583 (citations omitted); *see also*, Lackawanna County District Attorney v. Coss, 531 U.S. 923, 121 S.Ct. 1567, 1573, 149 L.Ed.2d 608 (2001) (extending rationale to the § 2254 context).  Under Gideon, it is unconstitutional to try a defendant for a felony unless defendant is represented by counsel or validly waived the right to counsel. *See* Custis, 511 U.S. at 495-496, 114 S.Ct. at 1738 (discussing Gideon, other citations omitted).

Here, Defendant did not raise this claim at sentencing, but asserts that the claim was not raised due to ineffectiveness of counsel. This is a potentially viable § 2255 claim, if supported. It is not supported here.

Defendant includes an affidavit with his § 2255 motion. Doc. 88 (unlabeled attachment). He states that he entered a guilty plea to robbery in 1976 on the advice of Jim Dunn, the County Solicitor and not appointed defense counsel. Affidavit, pp. 1-2. He states that he was charged with two assault and batteries and Jim Dunn again told him to plead guilty. *Id.*, p. 2. Defendant states that he never knew that he had the right to counsel, or that Jim Dunn was the County Solicitor or what the role of a solicitor was with the court. *Id.*, p. 3.

Attached to the § 2255 motion in support of Defendant's related claims is composite Ex. C. It reflects that Defendant filed a motion in January 2004, in Horry County, South Carolina, challenging his 1976 and 1977 convictions. *Id.*, pp. 1, 3.[7]

The superseding indictment in this case charged (as the prior felonies) that on or about October 11, 1976, Defendant was convicted in South Carolina of armed robbery and larceny; that on or about June 21, 1977, Defendant was convicted in South Carolina of two counts of "assault and battery of a high and aggravated nature;" and that on or about January 19, 1989, Defendant was convicted in the Eastern District of Virginia of making a false statement to a firearms dealer. Doc. 16.

---

[7] For ease of reference, the court has numbered the bottom right corner of the pages (not all of which are legible) of the court's copy.

The PSR indicates that Defendant "was represented by Attorney Palma Huggins" in connection with the conviction of October 11, 1976.  PSR, ¶ 34.[8]

The PSR reflects that Defendant "was represented by an attorney" in connection with convictions of June 21, 1977, for assault and battery with intent to kill and assault and battery of a high and aggravated nature.  PSR, ¶ ¶ 35-36 (referencing case numbers 77-GS-26-305 and 77-GS-26-353).  According to his exhibits, Defendant was charged with assault and battery with intent to kill Kenneth Williams with a steak knife on or about May 6, 1977 (77-GS-26-305).  Doc. 88, Ex. C, pp. 10, 15.  Attorney Joe Reaves was appointed to represent Defendant on that charge on May 10, 1977.  *Id.*, p. 9.  Defendant was charged with assault and battery of a high and aggravated nature, using his hands, fists and feet, on jailer French Collins, on or about June 1, 1977 (77-GS-26-353).  *Id.*, p. 7.  On June 21, 1977, with regard to the first offense, assault with intent to kill Williams, Defendant entered a guilty plea to assault and battery of a high and aggravated nature; he was sentenced to six years.  *Id.*, p. 16.  On the same day, he entered a guilty plea to the second offense, assault upon Collins, and received a three year sentence.  *Id.*  Since Defendant had a lawyer to represent him on the charge

---

[8] The PSR reflects that Huggins also represented Defendant in connection with an armed robbery sentence imposed on October 8, 1976.  PSR, ¶ 33.  It is noted that in his pro se motion to correct presentence report, Defendant asserted as to ¶ ¶ 33-34: "[i]ncorrect attorney, only one count armed robbery, and robbery both on same day, not consecutive days."  Doc. 64, p. 3, item 24.  Defendant next asserted that, as to ¶ 35, "once again defendant was not represented by an attorney," and as to ¶ 36 "defendant did not have an attorney."  *Id.*, items 25 and 26.  The motion was denied as untimely and, "so far as shown by this record, unfounded on the merits."  Doc. 65.

involving victim Williams (attorney Reaves), it is reasonable to infer that the same lawyer represented Defendant on both offenses.

The PSR also reflects that Defendant "was represented by an attorney" in connection with the federal conviction of January 19, 1989, in the Eastern District of Virginia. PSR, ¶ 37.

Counsel made no objection to paragraphs 33-37 of the PSR. *See* Objections to the Presentence Report dated February 20, 2002. At sentencing, Defendant told the court he had read the PSR and discussed it with counsel. Doc. 63, p. 3. If Defendant did not have counsel for a prior conviction then surely he would have known it, and would have known that any indication to the contrary in the PSR was erroneous. He should have advised counsel of any factual inaccuracies when they reviewed the PSR together. Failing to investigate the truth of factual matters set forth in the PSR *and conceded by Defendant* is not professionally unreasonable. *See* Strickland, 466 U.S. at 690-91, 104 S.Ct. at 2066 ("counsel has a duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary. . . . [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, *applying a heavy measure of deference to counsel's judgments*.") (emphasis added).

The PSR, as well as the state court records produced by Defendant himself, show that Defendant was represented by counsel for the prior convictions. Defendant's conclusory allegations, contradicted by the record and unsupported by any other

evidence,[9] fail to demonstrate that he was actually denied counsel for the prior convictions in violation of <u>Gideon</u>.  Defendant has not demonstrated that he was improperly sentenced under § 924(e), or that counsel was ineffective for failing to challenge the use of his prior convictions to challenge sentencing under § 924(e).

**Recommendation**

It is therefore respectfully **RECOMMENDED** that Defendant's amended § 2255 motion, doc. 88, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on September 7, 2005.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

---

[9] Defendant sought relief in state court in January of 2004.  Doc. 88, Ex. C. Defendant has given no indication that relief was granted, nor has he obtained any documentation from the state courts to show that he was unconstitutionally denied counsel in connection with the prior convictions.

Case Nos. 5:01cr16-RH and 5:04cv62-RH/WCS